Neel Chatterjee (SBN 173985)
nchatterjee@goodwinlaw.com
Andrew Ong (SBN 267889)
aong@goodwinlaw.com
**GOODWIN PROCTER** LLP
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

Hayes P. Hyde (SBN 308031)
hhyde@goodwinlaw.com
**GOODWIN PROCTER** LLP
Three Embarcadero Center
San Francisco, CA 94111
Tel: +1 415 733 6000
Fax: +1 415 677 9041

*Attorneys for Plaintiffs*

Vasudha Talla (SBN 316219)
*vtalla@aclunc.org*
Jamie L. Crook (SBN 245757)
*jcrook@aclunc.org*
**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION OF NORTHERN**
**CALIFORNIA**
39 Drumm Street
San Francisco, CA 94111
Tel: +1 415 621 2493
Fax: +1 415 255 8437

Andrea Scripa (*pro hac vice* forthcoming)*
*ascripa@goodwinlaw.com*
**GOODWIN PROCTER** LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 459 7073
Fax: +1 617 321 4418
*\*Admitted in MA only; working under the*
*supervision of Goodwin partners in NY with*
*admission pending*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO-OAKLAND DIVISION

| | |
|---|---|
| FLORICEL LIBORIO RAMOS, MARIA DE JESÚS MEDINA RAMIREZ, MARIA VALDOVINOS DIAZ, YOLANDA VALLEJO MEDRANO,<br><br>Plaintiffs,<br><br>v.<br><br>G4S SECURE SOLUTIONS (USA), INC.,<br><br>Defendant. | Case No.  3:19-cv-2757<br><br>**COMPLAINT FOR ASSAULT, BATTERY, NEGLIGENCE, AND NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER CALIFORNIA STATE LAW**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.       Floricel Liborio Ramos, Maria Valdovinos Diaz, Maria de Jesús Medina Ramirez, and Yolanda Vallejo Medrano ("Plaintiffs") bring this suit after having suffered brutal and inhumane treatment by defendant G4S Secure Solutions (USA), Inc. ("G4S") in July 2017. Plaintiffs were in the care of G4S, a company contracted by the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE") to drive individuals in ICE custody from one detention facility to another.

2.       G4S has frequently and publicly come under scrutiny for abuses against individuals detained in its care.  In July 2017, G4S drove Plaintiffs from one detention facility in Northern California to another detention facility in Bakersfield, California, a distance of approximately 280 miles that under normal circumstances would take less than five hours to drive.  Yet G4S subjected Plaintiffs, along with several other women, to an arduous journey lasting over 24 hours. G4S placed Plaintiffs in a dark, windowless van in suffocating heat for several hours.  Plaintiffs felt themselves suffocating because there was no air circulation in the compartment.  Metal shackles at their wrists and ankles, connected by a metal chain to their waists, made it difficult for them to move.  Women vomited and fainted.  Plaintiffs' cries for help were ignored by the driver, who turned up the radio to drown out their screams.  The driver repeatedly swerved off the road while texting on his phone, exacerbating Plaintiffs' pain and fears of an accident.  Plaintiffs—who are mothers and grandmothers—thought they would never see their families again and began to pray.

3.       Throughout the ordeal, spanning more than a day, Plaintiffs were denied access to adequate food, water, sleep, and toilets.  They were unjustifiably shackled at both the wrists and ankles while they were moved between vehicles and facilities.  Ms. Vallejo Medrano was intentionally assaulted by an officer during her transfer from a vehicle to a building in San Francisco because she was unable to move to the officer's satisfaction while shackled at the ankles.  G4S also denied Ms. Vallejo Medrano, who suffers from asthma, access to her inhaler during the transport, including while shut into a hot, airless van.  G4S knowingly deprived Ms. Medina Ramirez of critical diabetes medication throughout the transfer, along with appropriate

1

1   nutrition to manage her diabetic condition.

2       4.      As a result of G4S's actions, Plaintiffs suffered symptoms of heat stroke and

3   dehydration, and almost died while caged in an unsafe, extremely hot, and dangerously-driven

4   vehicle without sufficient air for hours on end.  Plaintiffs seek compensation for their injuries and

5   to prevent continued abuses from being committed against other detainees, despite fearing

6   retaliation from ICE for this suit.  G4S must be held accountable for the harm it has caused these

7   women through its egregious conduct.

8                                   **PARTIES**

9       5.      Plaintiff Floricel Liborio Ramos is a Mexican citizen residing in California.  She is

10  thirty-nine years old.

11      6.      Plaintiff Maria de Jesús Medina Ramirez is a Mexican citizen residing in

12  California.  She is sixty-six years old.

13      7.      Plaintiff Maria Valdovinos Diaz is a Mexican citizen residing in California.  She is

14  forty-six years old.

15      8.      Plaintiff Yolanda Vallejo Medrano is a Mexican citizen residing in Mexico.  She is

16  forty-four years old.

17      9.      Defendant G4S Secure Solutions (USA), Inc. is a Delaware company

18  headquartered in Jupiter, Florida.  At all times relevant to the allegations in this complaint, G4S

19  provided transportation services to ICE in the state of California, including within ICE's San

20  Francisco Area of Responsibility ("AOR"), pursuant to a contract with ICE dated July 24, 2012.

21                          **SUBJECT MATTER JURISDICTION**

22      10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

23  § 1332.

24      11.     Defendant G4S is a citizen of the state of Delaware and the state of Florida for

25  purposes of subject matter jurisdiction.  No Plaintiff is a citizen of Delaware and no Plaintiff is a

26  citizen of Florida.

27      12.     The amount in controversy between each Plaintiff and G4S exceeds $75,000

28  because each Plaintiff individually seeks and is legally entitled to recover more than $75,000 in

                                        2

COMPLAINT

compensatory damages.  In addition, each Plaintiff individually seeks and is legally entitled to recover more than $75,000 in punitive damages.

### PERSONAL JURISDICTION

13.     This Court has personal jurisdiction over Defendant G4S.  At all times relevant to the allegations in this complaint, G4S maintained contacts within this District by employing individuals to provide transportation and related detention services in the ICE San Francisco AOR.  G4S employees and agents drove individuals in ICE custody throughout Northern California and physically worked at ICE offices in San Francisco and San Jose.  G4S employees and agents provided these services pursuant to a contract with ICE dated July 24, 2012.

### VENUE AND INTRADISTRICT ASSIGNMENT

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2).  A substantial part of the events giving rise to the claims in this action took place in this district, namely Contra Costa County, the City and County of San Francisco, and Santa Clara County.

15.     Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco Division is proper.  A substantial part of the events giving rise to the claims in this action took place in San Francisco County and Contra Costa County.  On information and belief, Defendant G4S has an office located in San Francisco.

### FACTUAL ALLEGATIONS

16.     On July 17, 2017, Plaintiffs were in the custody of ICE and housed at the West County Detention Facility ("WCDF") in Richmond, California.  Before 4 a.m., officers woke Plaintiffs and several other women abruptly so that they could be driven from WCDF to the Mesa Verde Detention Facility in Bakersfield, California.  An ordinary drive from Richmond to Bakersfield by car lasts no longer than 5 hours.  However, Plaintiffs, in a group with several other women, were shuffled through various facilities and vehicles on a journey that lasted over 24 hours.  Plaintiffs were not booked and admitted to the Mesa Verde facility until the following morning, on July 18, 2017.  During this long trip, Defendant G4S subjected Plaintiffs and their fellow passengers to unsafe and inhumane conditions, which resulted in physical pain, injuries, and the exacerbation of medical conditions including asthma and diabetes; deprivation of adequate

3

COMPLAINT

food, water, sleep, and medication; and severe emotional trauma.

17.    On information and belief, G4S employees and agents conducted all transportation of Plaintiffs throughout the days of July 17, 2017 and July 18, 2017 and possessed custody of Plaintiffs from the point at which they left WCDF to the point at which they arrived at Mesa Verde Detention Facility in Bakersfield, California.  A contract between ICE and G4S dated July 24, 2012 (the "Contract") obligated G4S to provide employees and agents to perform transportation and detention officer services during the period of July 2017 in the San Francisco AOR.  Under the Contract, G4S provided transportation and detention officer services in at least six offices within the San Francisco AOR, including San Francisco, San Jose, Bakersfield, Fresno, Sacramento, and Stockton.  Under the Contract, G4S drove Plaintiffs and held them in custody on the days of July 17 and July 18, 2017.

**Transport from WCDF to San Francisco**

18.    Prior to leaving WCDF on the morning of July 17, 2017, Plaintiffs ate a small breakfast and were told to gather their personal belongings.  Plaintiffs changed into the clothes they were wearing when ICE took them into custody.

19.    Ms. Medina Ramirez, who is diabetic, was not given the dose of prescription medication she routinely received at 6 a.m. for her diabetes.

20.    Ms. Vallejo Medrano, who has asthma, had her inhaler taken away from her at WCDF.  Her asthma is significant, requiring her to use her inhaler every day.  Her asthma attacks are unpredictable and occur even when she feels calm and is not under any exertion.  Ms. Vallejo Medrano usually carries her inhaler with her at all times.  When her inhaler was taken at WCDF, she asked to have her inhaler with her.  Ms. Vallejo Medrano was told she could not have her inhaler back until after she arrived at the other detention facility. She was denied her inhaler for the duration of the transfer.

21.    G4S officers shackled Plaintiffs before they boarded the bus transporting them to San Francisco.  G4S officers placed shackles on Plaintiffs' wrists, which were shackled together, with a chain to the waist, and their ankles were shackled together.  Plaintiffs' cuffs around their ankles were tight and the chain separating them was short, making it difficult to walk.  Some

COMPLAINT

Plaintiffs had a particularly difficult time walking while shackled because they were wearing heeled shoes.

22.     G4S officers did not have any need to shackle or restrain Plaintiffs because they did not display or threaten violent behavior, they possessed no relevant history of criminal activity, and no likelihood of Plaintiffs' escape existed.  There were also no exigent circumstances justifying Plaintiffs' shackling and restraints.

23.     G4S officers then loaded Plaintiffs into a bus at WCDF and drove them to San Francisco.

24.     Upon arriving in San Francisco, G4S officers did not remove Plaintiffs' shackles before they exited the vehicle.

25.     As Ms. Vallejo Medrano was exiting the vehicle while shackled, her shoes came off and she was unable to adjust them due to her shackles.  She slipped and rolled her ankle.  The metal shackles tightened and pushed forcefully into her ankles, resulting in bruising and swelling.  A G4S officer instructed Ms. Vallejo Medrano to walk towards the building, but she could not walk because her shoes were not securely fastened.  She leaned down to try to adjust her shoes.  She indicated to the officer that she could not walk because of her shoes, but the G4S officer grabbed her and shook her.  Ms. Vallejo Medrano leaned down a second time, at which point the G4S officer grabbed her roughly, lifted her up, twisted her body, pushed her forward, and insulted her.

26.     Other G4S officers witnessed Ms. Vallejo Medrano being grabbed, lifted, twisted, and pushed by the G4S officer while she was exiting the vehicle.

27.     Upon entering the San Francisco facility, G4S officers took Plaintiffs to a "hielera" or "ice box"—a room that is intentionally kept very cold and furnished only with metal benches and an open toilet.  Ms. Liborio Ramos was told by a G4S officer that the room was kept cold as "punishment."

28.     Plaintiffs' shackles were finally removed inside the hielera.  In the course of removing the shackles, a G4S officer roughly and forcefully kicked Ms. Medina Ramirez's legs apart, without warning.

COMPLAINT

29.     Ms. Vallejo Medrano's ankle was visibly swollen, and she was crying in pain. Ms. Vallejo Medrano asked a G4S officer for a doctor, but the G4S officers did not provide her with first aid or medical attention.

30.     At approximately 10:00 or 10:30 AM in San Francisco, some of the Plaintiffs received a sandwich and a bottle of water. Plaintiffs received this food only after they told the G4S officers they were hungry and asked for food.

31.     Though they remained in the hielera for several hours, Plaintiffs did not receive any additional water or food in San Francisco, nor did they have access to a private restroom.

**Bus Transport from San Francisco to Gilroy**

32.     After several hours in the hielera, G4S officers drove Plaintiffs from San Francisco to Gilroy, California. In San Francisco, G4S officers again used metal shackles to restrain Plaintiffs—as before, they had shackles on their wrists, connected to a chain around their waists, and shackles on their ankles.

33.     G4S officers took Plaintiffs from the hielera and boarded them onto a school bus-type vehicle, along with a number of male ICE detainees who G4S was also transporting.

34.     The bus transporting Plaintiffs from San Francisco had only one bathroom in the back of the bus. Plaintiffs could not use the bathroom during the trip, as there was a metal partition separating the men from the women, and the men were in the section of the bus where the bathroom was located.

35.     During the bus ride, Ms. Medina Ramirez felt ill because she was diabetic and had been denied her medication.

**Van Transport from Gilroy to Fresno**

36.     The G4S officer driving Plaintiffs from San Francisco arrived in Gilroy in the late afternoon or early evening hours of July 17, 2017.

37.     The G4S officer pulled over on the side of the highway at a truck weighing station. There were two white vans waiting—one for the men and the other for Plaintiffs and the other women passengers. The vans appeared old, in poor condition, and small, as if used for animal control. Neither van had any windows in the rear compartment where detainees were confined,

COMPLAINT

and both had doors to the rear compartment only at the back of the van.

38.     Plaintiffs disembarked from the bus, still shackled at their wrists, ankles, and waists.  They waited while the men were also removed and transferred to one of the vans and then Plaintiffs entered the other van.

39.     During the transfer, the G4S officers did not remove Plaintiffs' shackles, did not give them food or water, refused them time to rest, and refused them access to a restroom.

40.     Two of the women passengers told the G4S officers that they could not be confined to the dark compartment due to their medical and mental health conditions.  The G4S officers ignored them.

41.     Plaintiffs were forced to enter the van through the rear doors and sat on metal benches running along the sides of the van.  Plaintiffs struggled to fasten their seatbelts because their wrists were shackled and the metal chain affixed to their waists made it difficult for the seatbelt to be fastened.  The officers did not assist Plaintiffs in fastening their seatbelts.

42.     The rear compartment of the van was extremely hot and the temperature outside the van was high, reflecting the July heat.  Plaintiffs felt the heat in the rear compartment before they even entered the van.  Plaintiffs heard one G4S officer comment on how hot it was in the back of the van.

43.     Plaintiffs were wearing heavy clothing, including sweaters, long-sleeved shirts, and long pants.  The G4S officers gave them no opportunity to change or remove excess clothing before entering the extremely hot van.

44.     Once Plaintiffs entered the compartment of the van, they realized that no air was circulating in their compartment.  Thick metal bars and a solid clear partition made of glass or plastic separated the driver from Plaintiffs so that no air circulation from the driver's compartment reached the women.

45.     The rear compartment where Plaintiffs were forced to sit felt like a cage and an oven.  There was not enough room for the women to be safely driven in the rear compartment.  Once the van doors were closed, there was no light in the compartment.

46.     Before the G4S officer began driving, a woman again protested that she could not

7

COMPLAINT

1    be inside the windowless van because she had a phobia.  The G4S officer ignored her and began

2    driving.

3         47.    The lack of air, heat, darkness, shackles, and other conditions in the G4S-operated

4    van quickly overwhelmed Plaintiffs and their fellow passengers.  Plaintiffs and their fellow

5    passengers struggled to remove their sweaters and warm clothing, but their wrist shackles and

6    metal chain prevented them from doing so.

7         48.    Plaintiffs and the other women passengers began having anxiety attacks, crying,

8    fainting, and vomiting.  One woman crawled over to a woman who fainted to hold her so that she

9    would not hit her head or body against the van.  She tried to keep the woman talking so that she

10   would stay conscious.  Some of the women tried to help the woman who fainted by holding her

11   and blowing their breath toward her to cool her.  Ultimately, the woman laid down on the floor of

12   the van because she felt so sick.  Another woman fainted and did not sit back up, leading Plaintiffs

13   and the other women to think she had died when she did not respond.

14        49.    Plaintiffs cried and yelled to the G4S officer to stop the van and help them and the

15   women who fainted and vomited.  Plaintiffs banged on the van to get the G4S officer's attention,

16   even going so far as to unbuckle their waist belts and use the metal clasps to bang on the benches.

17   The women told the driver that they needed air, but he would not help them.

18        50.    The G4S officer could hear Plaintiffs' cries and banging—he turned around once

19   and yelled at them to shut up.  He otherwise ignored them and turned up the radio to drown out

20   their pleas for help.

21        51.    The G4S officer texted while driving, which caused him to swerve off the road

22   while driving and slammed Plaintiffs against the walls of the van.

23        52.    Plaintiffs felt themselves suffocating because of the lack of air and the heat inside

24   the van.  They blew air on each other to try and give each other enough air to breathe.  They were

25   hot, sweating, and dizzy, and their hearts were racing.

26        53.    Plaintiffs felt desperate and scared that they were about to die.

27        54.    Ms. Liborio Ramos cried and screamed.  She thought she would take her last breath

28   in the rear of the van, without seeing her children again and saying goodbye to them.  She thought

8

God had placed her in the back of the van with the other women, so that if no one made it out of the van alive, at least they would remember each other.  Her heart felt as though it was shutting down with every passing second.  She began praying.  To this day, she believes she is alive only because of a miracle.

55.     Ms. Medina Ramirez also thought she would die in the van.  She is afraid of being in confined spaces, and struggled to breathe due to her fear and the heat.  She felt the need to vomit like other women in the van.  Her diabetes made her hunger and thirst debilitating.  She felt ill because G4S had failed to provide her with her diabetes medication.  Her wrists, shoulders, and back hurt from the tight shackles.  In addition, the driver's erratic driving caused Ms. Medina Ramirez to sway from side to side.  She used her feet to stay stable, which placed pressure on the shackles on her feet and caused her to feel pain in her feet and knees.  At 64 years old, the lack of sleep, access to a bathroom, and proper food and water caused significant harm to Ms. Medina Ramirez.

56.     Ms. Vallejo Medrano also thought she would die and never see her four children again.  She screamed for the G4S officer to stop the van.  She felt weak, dizzy, thirsty, and hungry.  Ms. Vallejo Medrano suffers from asthma and could not breathe, and felt herself suffocating.  She feared that she would suffer an asthma attack.  Though she had been prescribed an inhaler for her asthma condition, an officer took the inhaler away from her in WCDF, so she could not use it.  Her throbbing ankle was severely swollen.

57.     Ms. Valdovinos Diaz felt as though she was suffocating.  She had seen news reports of other people being transported and dying in vehicle compartments without air and light and could not believe that this was happening to her.  She thought she would die too.  Her wrists hurt from the shackles that tightened as she tried to help the other women.  She felt scared and helpless due to her inability to help herself and the others.

58.     After several hours, the G4S-operated van transporting Plaintiffs arrived in Fresno in the late evening.

59.     In Fresno, G4S officers other than the driver opened the doors to the rear compartment holding Plaintiffs.  The G4S officers were surprised at the sight and smell of the

9

COMPLAINT

1   compartment where Plaintiffs were confined.

2        60.    Plaintiffs and the other women were taken by G4S officers to a building.  G4S

3 officers unshackled one hand for each person so that they could eat sandwiches and drink juice or

4 water.  This was the only food the G4S officers provided to Plaintiffs or the other women in the

5 approximately 12 hours since some of them last ate or drank in San Francisco.  At least one of the

6 women in the group was unable to eat because she felt too sick.

7                      **Van Transport from Fresno to Mesa Verde Detention Facility**

8        61.    G4S officers then drove Plaintiffs and their fellow passengers from Fresno to

9 Bakersfield.

10       62.    Upon arriving in Bakersfield, G4S officers kept Plaintiffs waiting in the van for one

11 hour before they entered Mesa Verde Detention Facility.  While Plaintiffs remained in the van, the

12 G4S officers did not unshackle them, did not provide them with food or water, and did not offer

13 them an opportunity to use the bathroom.

14       63.    The G4S officers transferred Plaintiffs from the van to Mesa Verde Detention

15 Facility in the early morning hours of July 18, 2017.

16       64.    Inside Mesa Verde, Plaintiffs spent three to four hours in processing, which

17 included having photos taken, physicals performed, and blood drawn.  Plaintiffs were so

18 exhausted that they fell asleep in their chairs.

19       65.    After hours of processing, Plaintiffs received a breakfast—several hours since their

20 last meal.

21       66.    Throughout the transport, G4S officers had neglected to provide the necessary

22 standard of care for Ms. Medina Ramirez's diabetes; she was denied appropriate meals as well as

23 her medication, and did not have her blood levels checked until she had already started exhibiting

24 symptoms of diabetic shock.

25       67.    Plaintiffs arrived in their housing areas in Mesa Verde more than 24 hours after

26 being awoken in WCDF.

27       68.    When Plaintiffs finally went to bed, they began to cry from fear and the trauma of

28 what they had experienced.  An officer at the Mesa Verde facility noticed Plaintiffs' distress and

COMPLAINT

helped some Plaintiffs obtain attention from the health care staff.

**Injuries Suffered**

69.     Plaintiffs were not provided adequate food and water by G4S while G4S drove them and had them in custody during their transfer from WCDF to Mesa Verde Detention Facility. Plaintiffs received meager meals at most twice from G4S during the over 24-hour transport process.  The spartan food that G4S provided Plaintiffs lacked sufficient nutritional value to sustain them for such long periods of time between meals.  As a result of G4S's actions, Plaintiffs suffered acute hunger and thirst throughout their journey.

70.     G4S deprived Plaintiffs of adequate opportunity to use the bathroom.  As a result of G4S's actions, Plaintiffs felt pain in their abdomens from having to hold in urine for many hours.

71.     G4S inappropriately and unnecessarily shackled Plaintiffs at the wrists, ankles, and with a metal chain to their waists.  As a result of G4S's actions, Plaintiffs experienced redness and soreness in their wrists from the shackles.  Plaintiffs also experienced stiffness and muscle pain in their legs and ankles from having to brace themselves on the metal bench in the Gilroy-Fresno van for extended periods with their ankles shackled.

72.     G4S exposed Plaintiffs to a range of extreme and unreasonable temperatures.  First, G4S placed Plaintiffs in extreme cold, on metal benches in the hielera in San Francisco.  Then G4S placed Plaintiffs in suffocating heat in the back of the van from Gilroy to Fresno.  As a result of G4S's actions, Plaintiffs became physically ill.  Plaintiffs experienced symptoms of heat stroke, including sweating, headaches, and dizziness.  They were unable to breathe properly and they had extremely elevated heart rates.  The heat, combined with the lack of adequate food and water throughout the journey, caused them to become severely dehydrated.  They felt confused and agitated, and the heat compromised their ability to think clearly in an extremely stressful situation.

73.     G4S placed Plaintiffs in unsafe vehicles, especially the van transporting them from Gilroy to Fresno.  G4S drove Plaintiffs from Gilroy to Fresno in a van that was too small to hold them safely, without lights, and with non-functioning air circulation.

74.     Their experiences during the transfer from WCDF to Mesa Verde, and in particular the experience in the van from Gilroy to Fresno, caused and continues to cause Plaintiffs to

11

COMPLAINT

experience severe and extreme emotional trauma.  As a result of G4S's actions, Plaintiffs each genuinely and reasonably believed that they would die.  They experienced or witnessed other Plaintiffs and women become injured and severely ill from the acts and omissions of G4S officers, including being denied access to water, sustenance, doctors, and medication, and being trapped in an unsafe, small, extremely hot, and dangerously-driven vehicle for hours on end.

75.    The G4S officers' reckless disregard for the women's health and safety, including their conscious disregard of their pleas for help, confirmed for Plaintiffs that they and the other women would not be helped should they fall into further peril.

76.    The conduct of G4S, which resulted in injury to Plaintiffs, was done with malice and oppression, and in willful and conscious disregard of the rights and safety of Plaintiffs, in that G4S and/or the agents acting on its behalf intentionally created the hazardous conditions in which they consciously placed Plaintiffs, disregarding the risks of death, physical injury, and emotional distress, and caused Plaintiffs to suffer physical injuries and emotional distress.

### *Floricel Liborio Ramos*

77.    In addition to the injuries described in the preceding paragraphs, Ms. Liborio Ramos suffered the following particularized injuries:

78.    Ms. Liborio Ramos was hungry and thirsty on July 17, 2017 and July 18, 2017, including during the transfer from Gilroy to Fresno.  Her hunger and thirst made her feel physically weak.  Her body felt heavy, especially due to the metal shackles and chains, and she could not move well because of their weight.

79.    The shackles around Ms. Liborio Ramos's wrists and ankles caused her physical pain.  She experienced bruising and redness on her wrists for several days after the transport.  Her ankles were red and raw and it was very painful for her to walk for four to five days.

80.    After arrival in Mesa Verde, Ms. Liborio Ramos suffered from an inability to sleep due to the emotional trauma she experienced during the transfer.  She had nightmares connected to the event that caused her to wake up screaming in Mesa Verde.  Ms. Liborio Ramos did not have an appetite for several days and felt afraid to go outside.  To this day, the over 24-hour transport in July 2017 continues to cause Ms. Liborio Ramos anxiety, stress, and depression in daily life.  She

12

COMPLAINT

1  still remembers the punishing heat and the feeling of suffocation she felt in the Gilroy-Fresno

2  van—she often relives this harrowing experience at night or when she is in the dark.  Turning off

3  the lights makes her feel anxious, and she continues to have difficulty sleeping.  Ms. Liborio

4  Ramos sought and continues to receive mental health treatment for the symptoms resulting from

5  her experience of being in G4S custody and being subjected to the inhumane conditions of the

6  more than day-long transfer from Richmond to Mesa Verde.

### *Maria de Jesús Medina Ramirez*

81.    In addition to the injuries described in the preceding paragraphs, Ms. Medina Ramirez suffered the following particularized injuries:

82.    Ms. Medina Ramirez was deprived by G4S of her diabetes medication, which she should have received twice a day pursuant to her prescribed treatment plan.  She last received her medication during the afternoon of July 16, 2017.  She was not given her medication at the regularly scheduled times on the morning and afternoon of July 17, 2017, and did not receive it again until some point after her arrival at Mesa Verde on the morning of July 18, 2017.  Due to the deprivation of her medication, along with the lack of proper food, water, and nutrition, Ms. Medina Ramirez suffered from pain, nausea, confusion, cold sweats, and dizziness associated with her diabetes condition.  Further, due to the stress of the incident, Ms. Medina Ramirez developed a skin rash on her back and chest.

83.    After arrival in Mesa Verde, Ms. Medina Ramirez experienced nightmares and trouble sleeping due to the emotional trauma she experienced during the transfer.  She continues to have trouble sleeping and experiences anxiety and depression.  She feels sometimes as though she needs to escape or run outside.  Ms. Medina Ramirez sought and received mental health treatment following her experience.  She takes medication for her psychological distress and is receiving treatment from a mental health professional for the symptoms resulting from her experience of being in G4S custody and being subjected to the inhumane conditions of the more than day-long transfer from Richmond to Mesa Verde.

### *Maria Valdovinos Diaz*

84.    In addition to the injuries described in the preceding paragraphs, Ms. Valdovinos

13

COMPLAINT

Diaz suffered the following particularized injuries:

85.     Ms. Valdovinos Diaz experienced pain in her bladder for approximately 3 days following the transfer on July 17 and July 18, 2017, as a result of having to hold her urine for such a long time.  The shackles around Ms. Valdovinos Diaz's wrists and ankles caused her physical pain, and she experienced redness and pain on her wrists for weeks after the transport due to the shackles.  Due to the pain on her wrists, Ms. Valdovinos Diaz could not join the work program at Mesa Verde, which paid detainees $1 per day for their work.  Ms. Valdovinos Diaz wanted to work in order to have funds to call her family, who did not know where she was.

86.     When Ms. Valdovinos Diaz tried to sleep the first night in Mesa Verde, she had difficulty falling asleep, and had nightmares when she finally did.  She continues to experience nightmares about being in the Gilroy-Fresno van and reliving the trauma of that journey.  Ms. Valdovinos Diaz felt anxious and nervous due to the emotional trauma and also due to her fear of being subjected to another transport in similar conditions.  Ms. Valdovinos Diaz continues to experience depression, fear, and anxiety stemming from the incidents of July 17 and July 18, 2017, and fears further transport while in custody.  Ms. Valdovinos Diaz sought and continues to receive mental health treatment for the symptoms resulting from her experience of being in G4S custody and being subjected to the inhumane conditions of the more than day-long transfer from Richmond to Mesa Verde.

### *Yolanda Vallejo Medrano*

87.     In addition to the injuries described in the preceding paragraphs, Ms. Vallejo Medrano suffered the following particularized injuries:

88.     Ms. Vallejo Medrano suffered an injury to her ankle due to shackling during transport in G4S custody on July 17 and 18, 2017, which was exacerbated by actions of the G4S officers throughout that period.  Ms. Vallejo Medrano also suffered unnecessary and excessive force inflicted by G4S officers on July 17, 2017 during her transfer from a G4S-operated vehicle to a building in San Francisco, which caused her pain in her shoulder and upper back and pain in her ankle.  Her ankle was red, swollen, and painful throughout the trip on July 17 and July 18, 2017, and these symptoms continued for several days after her arrival in Mesa Verde.  Her left

COMPLAINT

arm was also bruised for three days after she was grabbed and shaken by the G4S officer in San Francisco, and her shoulder and back area were painful because of the G4S officer grabbing and shaking her.

89.     Ms. Vallejo Medrano was unable to breathe properly in the back of the Gilroy-Fresno van due to the lack of air.  Her trouble breathing was exacerbated by her asthma condition, for which she had an inhaler that was taken away for the duration of the transfer.  She feared that she would suffer an asthma attack.

90.     After arrival in Mesa Verde, Ms. Vallejo Medrano experienced nightmares and could not sleep due to the emotional trauma of reliving the experience in the back of the Gilroy-Fresno van.  She frequently woke up in the middle of the night with anxiety from her experience. Ms. Vallejo Medrano sought and continues to receive mental health treatment for the symptoms resulting from her experience of being in G4S custody and being subjected to the inhumane conditions of the more than day-long transfer from Richmond to Mesa Verde.

### Contract Between ICE and G4S

91.     The Contract between ICE and G4S, pursuant to which G4S transported Plaintiffs on July 17 and July 18, 2017, imposed several obligations on ICE and G4S.

92.     The Contract required ICE to provide G4S with instructions on which detainees to transport and the locations to and from which the detainees should be transported.

93.     The Contract required G4S to transport the detainees safely.  The Contract further required G4S to (a) engage in annual, daily, and other routine inspections of vehicles used to transport detainees to ensure safety and operability; (b) document annual, daily, and other routine inspections of vehicles used to transport detainees; (c) use two G4S employees or agents to transport female-only detainees; (d) report to ICE and document violations or attempted violations of standards of conduct; (e) report to ICE and document all incidents that result in physical harm to detainees or threaten the health, safety, or welfare of any person; (f) notify a medical provider and ICE if any detainee requires immediate medical attention; and (g) serve detainees meals.

94.     The Contract required G4S to comply with ICE's 2011 Performance-Based National Detention Standards ("PBNDS").  Under the PBNDS, G4S was required to (a) engage in

annual, daily, and other routine inspections of vehicles used to transport detainees to ensure safety and operability; (b) document annual, daily, and other routine inspections of vehicles used to transport detainees; (c) refrain from using any vehicles to transport detainees if any safety repairs to the vehicle were necessary; (d) ensure that detainees are properly secured before the transport begins; (e) transport detainees in a safe and humane manner; (f) safeguard and dispense prescription medication to detainees during transport; (g) provide meals and snacks during any transfer that exceeds six hours, considering the last time that detainees ate, affording special consideration to detainees who have medical conditions, and documenting the provision of meals; (h) maintain a constant supply of drinking water and ice for detainees during transport; (i) refraining from handcuffing women detainees unless certain narrow circumstances exist, and documenting such exceptions; and (j) take appropriate action to respond to a detainee who becomes ill during transport, including requesting assistance from the nearest medical facility.

## **Respondeat Superior**

95.     Upon information and belief, Plaintiffs were driven by employees and agents of G4S throughout the time period of July 17 to 18, 2017, and in the custody of employees and agents of G4S throughout that same time period.  Employees and agents of G4S committed the tortious actions alleged herein while in the course and scope of their employment with G4S.  G4S is vicariously liable for the tortious actions of its employees and agents under the doctrine of respondeat superior.  G4S is vicariously liable for the tortious actions of its employees and agents as those actions could have been reasonably anticipated by G4S.

## **Need for Relief**

96.     The injuries that Plaintiffs suffered while in the custody of G4S and its employees, agents, and contractors and while G4S and its employees, agents, and contractors drove them and held them in custody during the transfer from WCDF to Mesa Verde were caused by the negligence, assault, battery, and negligent and intentional infliction of emotional distress committed by G4S and its employees, agents, and contractors.  G4S's tortious conduct violates California state law as well as ICE's policies, procedures, standards, contracts, and applicable federal law.

16

COMPLAINT

## COUNT I

### (Plaintiff Yolanda Vallejo Medrano - Assault)

97.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

98.     After Ms. Vallejo Medrano exited the transfer vehicle in San Francisco, a G4S officer grabbed, pushed, and twisted Ms. Vallejo Medrano even though she had tried to show him that she was unable to walk.

99.     Before the G4S officer committed one or more of these acts, it reasonably appeared to Ms. Vallejo Medrano that she was about to be touched in a harmful and offensive manner.

100.     The G4S officer acted intending to cause harmful or offensive contact.

101.     Ms. Vallejo Medrano was harmed by the unwanted contact with the G4S officer, as she sustained a bruised arm, experienced pain in her shoulder and upper back, and felt fearful and demeaned by the encounter.

102.     Ms. Vallejo Medrano's physical injuries were directly and proximately caused by the actions of the G4S officer.

103.     Ms. Vallejo Medrano seeks compensatory damages for pain and suffering from her physical injuries and emotional distress.

104.     The conduct of the G4S officer, and G4S, which resulted in physical injury and emotional distress to Ms. Vallejo Medrano, was done with malice and oppression, as defined by California Civil Code § 3294, and in willful and conscious disregard of the rights and safety of Ms. Vallejo Medrano and others.  Specifically, G4S, through its officers, directors, and/or managing agents, authorized, directed, conducted, or ratified each of the acts described in the preceding paragraphs, and as a result G4S is liable for oppression or malice in that its officer intentionally and gratuitously used excessive physical force in grabbing, pushing, and forcing Ms. Vallejo Medrano to walk, knowing that she was shackled at the ankles and could not do so.  As a result, Ms. Vallejo Medrano is entitled to an award of exemplary damages.

COMPLAINT

## COUNT II

### (Plaintiff Yolanda Vallejo Medrano - Battery)

105.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

106.    After Ms. Vallejo Medrano exited the transfer vehicle in San Francisco, a G4S officer grabbed, pushed, and twisted Ms. Vallejo Medrano even though she had tried to show him that she was unable to walk.  The contact with the officer during this encounter was harmful and offensive to Ms. Vallejo Medrano and would be harmful and offensive to a reasonable person.

107.    The officer acted intending to cause harmful or offensive contact.

108.    On information and belief, the officer was an agent of G4S.

109.    The unwanted contact caused harm to Ms. Vallejo Medrano, as she sustained a bruised arm, experienced pain in her shoulder and upper back, and felt fearful and demeaned by the encounter.

110.    Ms. Vallejo Medrano's physical injuries were directly and proximately caused by the actions of G4S and/or agents acting on its behalf.

111.    Ms. Vallejo Medrano seeks compensatory damages for pain and suffering for her physical injuries and emotional distress.

112.    The conduct of G4S and/or agents acting on its behalf, which resulted in physical injury and emotional distress to Ms. Vallejo Medrano, was done with malice and oppression, as defined by California Civil Code § 3294, and in willful and conscious disregard of the rights and safety of Ms. Vallejo Medrano and others.  Specifically, G4S, through its officers, directors, and/or managing agents, authorized, directed, conducted, or ratified each of the acts described in the preceding paragraphs.  In committing the acts described in this complaint, G4S is liable for oppression or malice in that its officer intentionally and gratuitously used excessive physical force in grabbing, pushing, and forcing Ms. Vallejo Medrano to walk, knowing that she was shackled at the ankles and could not do so.  As a result, Ms. Vallejo Medrano is entitled to an award of exemplary damages.

COMPLAINT

## COUNT III

### (All Plaintiffs - Intentional Infliction of Emotional Distress)

113.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

114.    On July 17 and July 18, 2017, G4S was in a special relationship with Plaintiffs as immigration detainees in its custody and care, over whom G4S exercised complete control and to whom G4S possessed a duty to protect from foreseeable harm.

115.    On July 17 and July 18, 2017, G4S officers intentionally subjected Plaintiffs to a terrifying and physically grueling journey of over 24 hours, from WCDF to Mesa Verde.

116.    Among other things, G4S officers intentionally placed Plaintiffs in the rear compartment of a van for transport from Gilroy to Fresno, with knowledge that:

    i.   The outside temperature on July 17, 2017 was extremely hot;

    ii.   The temperature inside the rear compartment of van where Plaintiffs and the other women passengers were confined was even hotter;

    iii.   The rear compartment of the van did not have air circulation, ventilation, or air conditioning;

    iv.   The rear compartment of the van had no windows through which air or ventilation could enter;

    v.   The rear compartment of the van was dark when the rear doors of the van were shut;

    vi.   The rear compartment of the van was too small to hold Plaintiffs safely;

    vii.   The group of women, including Plaintiffs, were shackled at the wrists, ankles, and to their waists, limiting their ability to move;

    viii.   Certain Plaintiffs and other women were wearing heavy, winter weight clothing;

    ix.   Certain women passengers had medical and mental health conditions that prevented them from being driven in a compartment that was dark, airless, and limited in space;

19

         x.   Plaintiff Maria de Jesus Medina Ramirez was diabetic and had not been administered her diabetes medication or appropriate food;

        xi.   Plaintiff Yolanda Vallejo Medrano had asthma and had been deprived of her inhaler;

       xii.   Certain Plaintiffs were elderly and/or injured; and

      xiii.   The van transport between Gilroy and Fresno was part of a longer journey, during which Plaintiffs did not receive adequate food, water, sleep, access to bathrooms, or medical treatment.

117.   The G4S driver of the Gilroy-Fresno cargo van, acting as an agent of G4S, intentionally:

        i.   Refused to provide Plaintiffs with water and did not provide sufficient food at regular intervals;

        ii.   Refused to provide Ms. Medina Ramirez with diabetes medication and appropriate food;

       iii.   Drove Plaintiffs in the rear of a cargo van, while shackled, without sufficient air, ventilation, or climate controls;

       iv.   Drove Plaintiffs in the Gilroy-Fresno van and ignored Plaintiffs' screams and banging for help, with the knowledge that Plaintiffs were vomiting, fainting, crying, screaming, overheating, and could not breathe; and

       v.   Drove the Gilroy-Fresno van recklessly, texting while driving and swerving off the road.

118.   These intentional, extreme, and outrageous actions by G4S and its employees, agents, and/or contractors were undertaken intentionally to cause Plaintiffs extreme emotional distress and physical injuries, or at a minimum were undertaken with reckless disregard of the fact that they would cause Plaintiffs to suffer severe emotional distress and physical injuries.  Any reasonable person would have known that such actions would foreseeably cause Plaintiffs to suffer severe emotional distress.

COMPLAINT

119.   These actions by G4S and its employees, agents, and/or contractors were extreme and outrageous because G4S abused the special relationship that existed between G4S and Plaintiffs and this special relationship gave G4S the power to damage Plaintiffs' interests.

120.   These actions by G4S and its employees, agents, and/or contractors caused Plaintiffs to suffer severe emotional distress during the transfer from WCDF to Mesa Verde Detention Center, and in particular during the van ride between Gilroy and Fresno, including the following:

i.   Fear, panic, terror, and apprehension of death while Plaintiffs were driven in the rear of the hot, windowless, and airless Gilroy-Fresno cargo van; feeling themselves asphyxiating; feeling that there was no way to escape the van; and being ignored by the G4S driver when pleading for help;

ii.   Fear, panic, and terror from Plaintiffs' beliefs that they would never see their families and children again; that at least one passenger had died because she fainted; witnessing other Plaintiffs and passengers panicking and asphyxiating;

iii.   Emotional distress and physical pain from bruising, redness, and pain in their limbs caused by improper shackling and the G4S driver's intentional and reckless conduct while driving;

iv.   Extreme hunger, thirst, and exhaustion from being deprived of adequate food, water, bathrooms, sleep, and an appropriately climate-controlled environment for an approximately 24-hour period;

v.   Fear, anxiety, and helplessness from being denied access to medication and medical care or witnessing others being denied such access for an approximately 24-hour period;

vi.   Fear, anxiety, degradation, and helplessness from being assaulted and battered by an officer or witnessing assaults by an officer;

vii.   Ongoing trauma and nightmares caused by nearly dying in the rear of the van while being driven by the G4S driver from Gilroy to Fresno;

viii.   Ongoing fears and trauma related to going outside, being driven by ICE and/or

COMPLAINT

G4S, and contact with detention personnel, all caused by nearly dying in the

rear of the van while being driven by the G4S driver from Gilroy to Fresno; and

ix. Ongoing trauma, extreme depression and anxiety, and other emotional distress,

all caused by nearly dying in the rear of the van while being driven by the G4S

driver from Gilroy to Fresno.

121.   In addition to the foregoing, Ms. Medina Ramirez suffered anxiety, fear, and pain as a result of her diabetic shock.

122.   In addition to the foregoing, Ms. Vallejo Medrano suffered anxiety, fear, and pain as result of her bruised and swollen ankle, arm, shoulder, and upper back.

123.   G4S and/or agents acting on its behalf actually and proximately caused Plaintiffs' extreme emotional distress through its extreme and outrageous conduct.

124.   Plaintiffs seek compensatory damages for the extreme emotional distress caused by G4S and/or agents acting on its behalf.

125.   The conduct of G4S and/or agents acting on its behalf, which resulted in injury and extreme emotional distress to Plaintiffs, was done with malice and oppression, as defined by California Civil Code § 3294, and in willful and conscious disregard of the rights and safety of Plaintiffs and others.  Specifically, G4S, through its officers, directors, and/or managing agents, authorized, directed, conducted, or ratified each of the acts described in the preceding paragraphs. In committing the acts described in this complaint, G4S is liable for oppression or malice in that its officers created and placed Plaintiffs in conditions in which it knew Plaintiffs could die and would suffer physical injuries and extreme emotional distress.  As a result, Plaintiffs are entitled to an award of exemplary damages.

## COUNT IV

### (All Plaintiffs - Negligence)

126.   Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

127.   As a company providing transportation services to immigration detainees, G4S had a duty to the detainees entrusted in its care, including Plaintiffs, to protect them from foreseeable

22

harm.

128.     G4S possessed duties under the Contract and under the PBNDS towards Plaintiffs, including, but not limited, to the duty to:

    i.     Provide Plaintiffs with medication and adequate medical care;

    ii.     Provide Plaintiffs with sufficient food and drink;

    iii.     Provide Plaintiffs with a safe environment;

    iv.     Avoid using physical force on Plaintiffs;

    v.     Avoid shackling Plaintiffs;

    vi.     Inspect vehicles used to transport detainees on a daily, monthly, and annual basis; and

    vii.     Remove immediately from service any vehicles used to transport detainees that were in an unsafe condition.

129.     G4S had a duty to avoid placing Plaintiffs in shackles when not necessary to the health or safety of Plaintiffs and others, and when not necessary to mitigate the risk of flight.

130.     G4S also had a duty to avoid placing Plaintiffs in extreme temperatures, to avoid using unnecessary force against Plaintiffs during transport, and to otherwise ensure Plaintiffs' health and safety.

131.     G4S had a duty to adequately train and supervise its employees and contractors to ensure that they provided an appropriate degree of care to detainees in G4S custody.

132.     G4S had a duty to exercise diligence in hiring and entrusting job responsibilities to its employees and contractors.

133.     G4S breached the above duties by, among other things:

    i.     Failing to provide Plaintiffs with medication and adequate medical care;

    ii.     Failing to provide Plaintiffs with proper food and drink;

    iii.     Using physical force against Plaintiffs;

    iv.     Placing Plaintiffs in shackles without justification;

    v.     Failing to inspect the vehicles used to transport Plaintiffs;

    vi.     Failing to ensure vehicles used to drive Plaintiffs were adequate in size, had

23

adequate air circulation, ventilation, and temperature controls;

    vii.  Failing to take unsafe vehicles out of service;

    viii.  Failing to ensure that transports were limited to an appropriate duration;

    ix.  Failing to monitor its employees to ensure its employees were protecting Plaintiffs' health and safety, and otherwise following appropriate guidelines and practices in transporting Plaintiffs;

    x.  Failing to exercise diligence in hiring and training its employees; and

    xi.  Failing to otherwise protect Plaintiffs from foreseeable harm due to improper shackling; lengthy transfers without food, water, or sleep; denial of medication and medical assistance; use of unsafe and small vehicles; use of a windowless cargo van without air circulation or climate controls on a hot summer day; and unsafe driving.

134.    G4S's breach of duty actually and proximately caused damage to Plaintiffs including, without limitation:

    i.  Difficulty breathing and asphyxiation, caused by lack of air in the rear of the Fresno-Gilroy van;

    ii.  Dehydration, sweating, overheating, nausea, dizziness, elevated heartbeat, confusion, and other symptoms of heat stroke caused by elevated temperatures in the rear of the Fresno-Gilroy van;

    iii.  Bruising and redness due to improper shackling;

    iv.  Pain in Plaintiffs' legs, wrists, and ankles due to sitting for extended periods of time while shackled and being forced to move between vehicles and facilities while shackled;

    v.  Deprivation of adequate food, water, bathrooms, and sleep, resulting in hunger, dehydration, abdominal pain, and exhaustion;

    vi.  Deprivation of appropriately climate-controlled vehicles and facilities;

    vii.  Fear, panic, terror, and apprehension of death while Plaintiffs were driven in the rear of the hot, windowless, and airless Gilroy-Fresno cargo van; feeling

24

COMPLAINT

themselves asphyxiating; feeling that there was no way to escape the van; and being ignored by the G4S driver when pleading for help;

viii.   Fear, panic, and terror from Plaintiffs' beliefs that they would never see their families and children again; beliefs that at least one passenger had died because she fainted; and witnessing other Plaintiffs and passengers panicking and asphyxiating;

ix.   Emotional distress and physical pain from bruising, redness, and pain in their limbs caused by improper shackling and the G4S driver's intentional and reckless conduct while driving;

x.   Extreme hunger, thirst, and exhaustion from being deprived of adequate food, water, bathrooms, sleep, and an appropriately climate-controlled environment for an approximately 24-hour period;

xi.   Fear, anxiety, and helplessness from being denied access to medication and medical care or witnessing others being denied such access for an approximately 24-hour period;

xii.   Fear, anxiety, degradation, and helplessness from being assaulted and battered by an officer or witnessing assaults by an officer;

xiii.   Ongoing trauma and nightmares caused by nearly dying in the rear of the van while being driven by the G4S driver from Gilroy to Fresno;

xiv.   Ongoing claustrophobia caused by nearly dying in the rear of the van while being driven by the G4S driver from Gilroy to Fresno;

xv.   Ongoing fears and trauma related to going outside, being driven by ICE and/or G4S, and contact with detention personnel, all caused by nearly dying in the rear of the van while being driven by the G4S driver from Gilroy to Fresno; and

xvi.   Ongoing trauma, extreme depression and anxiety, and other emotional distress, all caused by nearly dying in the rear of the van while being driven by the G4S driver from Gilroy to Fresno.

135.   With respect to Ms. Medina Ramirez, G4S's breach of duty actually and

proximately caused further damage, including, without limitation:

    i. Diabetic shock from denial of access to doctors and diabetes medication,
     including after medical attention was requested; and

    ii. A rash on Ms. Medina Ramirez's back and chest.

  136. With respect to Ms. Vallejo Medrano, G4S's breach of duty actually and
proximately caused further damages, including, without limitation:

    i. A bruised arm for three days;

    ii. Shoulder and upper back pain; and

    iii. A bruised and swollen ankle for at least several days, which resulted in
     difficulty walking and added pain during shackling.

  137. G4S and/or agents acting on its behalf actually and proximately caused Plaintiffs'
physical injuries and severe emotional distress through the acts described in the preceding
paragraphs.

  138. Plaintiffs seek compensatory damages for the physical injuries and severe
emotional distress caused by G4S and/or agents acting on its behalf.

  139. The conduct of G4S and/or agents acting on its behalf, which resulted in physical
injury and extreme emotional distress to Plaintiffs, was done with malice and oppression, as
defined by California Civil Code § 3294, and in willful and conscious disregard of the rights and
safety of Plaintiffs and others.  Specifically, G4S, through its officers, directors, and/or managing
agents, authorized, directed, conducted, or ratified each of the acts described in the preceding
paragraphs.  In committing the acts described in this complaint, G4S is liable for oppression or
malice in that its officers created and placed Plaintiffs in conditions in which it knew Plaintiffs
could die and would suffer physical injuries and extreme emotional distress.  As a result, Plaintiffs
are entitled to an award of exemplary damages.

## COUNT V

### (All Plaintiffs - Negligence - Negligent Infliction of Emotional Distress)

  140. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the
allegations in all the preceding paragraphs.

26

COMPLAINT

141.     Plaintiffs are all women who were held by G4S and by ICE in custody together, along with other women passengers who were driven by G4S on July 17 and July 18, 2017.

142.     On July 17 and 18, 2017, Plaintiffs and their fellow women passengers suffered physical injury and severe emotional distress that was directly and proximately caused by the conduct of G4S and/or agents acting on its behalf, as described in Count III, above.

143.     As described above in Count III, G4S acted in an extreme and outrageous manner towards Plaintiffs and the other women transported between WCDF and Mesa Verde Detention Center on July 17 and July 18, 2017.

144.     A reasonable person would have understood the physical risks of placing a group of shackled women in the rear of a van in extreme heat and with no air circulation, and would not have done so.

145.     At the time of G4S's negligent and careless injury-producing conduct set forth above, Plaintiffs were aware that the conduct was causing injury to fellow Plaintiffs and other women passengers because they directly witnessed and observed the severe emotional distress, apprehension of death, physical injuries, diabetic shock, and other physical symptoms associated with assault, shackling, asphyxiation, dehydration, hunger, and lack of sleep experienced by their fellow Plaintiffs and women passengers, all caused by G4S and/or agents acting on its behalf.

146.     As a direct and proximate result of witnessing injury to fellow Plaintiffs and the other women passengers caused by G4S negligent and careless conduct, Plaintiffs sustained serious emotional distress and damages, as described above in Count III, which manifested physical symptoms and in some cases required medical treatment.

147.     As described above in Count III, the severe emotional distress experienced by Plaintiffs constitutes damage to Plaintiffs.

148.     Plaintiffs seek compensatory damages for the severe emotional distress caused by G4S and/or agents acting on its behalf.

149.     The conduct of G4S and/or agents acting on its behalf, which resulted in severe emotional distress to Plaintiffs, was done with malice and oppression, as defined by California Civil Code § 3294, and in willful and conscious disregard of the rights and safety of Plaintiffs and

others.  Specifically, G4S, through its officers, directors, and/or managing agents, authorized, directed, conducted, or ratified each of the acts described in the preceding paragraphs.  In committing the acts described in this complaint, G4S is liable for oppression or malice in that its officers created and placed Plaintiffs in conditions in which it knew Plaintiffs could die and would suffer physical injuries and extreme emotional distress.  As a result, Plaintiffs are entitled to an award of exemplary damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A.  Judgment in Plaintiffs' favor against G4S on all causes of actions alleged in this Complaint;

B.  Compensatory and general damages adequate to compensate Plaintiffs for the injuries suffered according to proof;

C.  Exemplary and punitive damages;

D.  Pre-judgment interest and post-judgment interest on any award of damages to the extent permitted by law;

E.  Litigation costs and reasonable attorneys' fees incurred in this action under any applicable law; and

F.  Such other relief as the Court may deem just and proper.

COMPLAINT

1

## <u>DEMAND FOR JURY TRIAL</u>

2      Plaintiffs demand trial by jury for all causes of action, claims, or issues in this action that

3 are triable as a matter of right to a jury.

4

5   Dated: May 21, 2019                              Respectfully submitted,

6

7                                                   By: */s/ Neel Chatterjee*
                                                        Neel Chatterjee
8                                                       Andrew Ong
                                                        Hayes P. Hyde
9                                                       Andrea Scripa (*pro hac vice* forthcoming)
                                                        **GOODWIN PROCTER LLP**

10                                                      Vasudha Talla
                                                        Jamie Crook
11                                                      **AMERICAN CIVIL LIBERTIES UNION
                                                        FOUNDATION OF NORTHERN
12                                                      CALIFORNIA**

13                                                      *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

COMPLAINT